UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARQUIS LEWINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:16-cv-02759-TWP-DLP |
| | ) |
| KENNETH KUNZ, and KENT MEIER | ) |
| | ) |
| Defendants. | ) |

**ENTRY DENYING IN PART AND GRANTING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Kenneth Kunz ("Officer Kunz") and Kent Meier ("Officer Meier") (collectively, Defendants). Dkt. [41]. *Pro se* Plaintiff Marquis Lewins ("Lewins") filed a civil rights complaint alleging that he was subjected to excessive force by the Defendants while they were serving a "no knock" search warrant on his residence. Lewins argues that summary judgment is not appropriate. For the reasons stated below, the Motion for Summary Judgment is **granted in part and denied in part.**

## I. BACKGROUND

### A. Procedural Background

Lewins is currently incarcerated at the Correctional Industrial Facility. The Court screened his complaint and determined that Lewins adequately stated an excessive force claim pursuant to the Fourth Amendment and a state law claim of negligence. Dkt. [6]. Claims against all unknown John Doe defendants were dismissed for failure to state a claim upon which relief can be granted because "it is pointless to include [an] anonymous defendant [ ] in federal court; this type of placeholder does not open the door to relation back under Fed.R.Civ.P. 15, nor can it otherwise help the plaintiff." *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997). *Id.* Lewins was

instructed that he may seek leave to refile or add a claim against them. *Id*. No such leave was ever requested.

Defendants filed their Motion for Summary Judgment on December 5, 2017. Dkt. [41]. Lewins filed his Response in opposition on January 8, 2018, Dkt. [46], and a Motion for Extension of Time to file exhibits, Dkt. [49]. The Court granted Mr. Lewin's motion for time to file exhibits through February 9, 2018. The Court also ordered that any reply would be due fourteen days after the exhibits were filed. Lewins never filed any exhibits. On June 8, 2018, the Court directed the Defendants to file a reply, and specifically requested briefing on Lewins' argument that notice under the Indiana Tort Claims Act ("ITCA") was not required. Dkt. [58]. On June 25, 2018, Defendants filed their reply. Dkt. [59]. The Defendants' summary judgment motion argues that Lewins' constitutional claim is without merit because their use of force was reasonable and because they are entitled to qualified immunity. They also argue that his state law claim for negligence is barred by the ITCA.

**B. Factual Background**

The following statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to Lewins as the non-moving party with respect to the Motion for Summary Judgment. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

Kenneth Kunz is a Special Weapons and Tactics ("SWAT") team officer with the Indianapolis Metropolitan Police Department ("IMPD"). The SWAT team executes "no knock" warrants. Dkt. [42]-1, ¶ ¶ 1, 2. On or about October 10, 2014, Officer Kunz received a call from IMPD Detective Patrick Collins ("Det. Collins"). Det. Collins had been investigating Lewins for dealing cocaine out of a home located at 1924 North King Avenue, Indianapolis, Indiana ("the

King Avenue address"). Dkt. [42]-1, ¶ 3. On two previous occasions, Lewins allegedly sold cocaine to a confidential informant from the King Street address. Dkt. [42]-1 at 1; Dkt. [42]-1 at 4-15. On October 10, 2014, Det. Collins secured a "no knock" warrant to be executed at the King Avenue address. Dkt. [42]-1 at 1.

Det. Collins and Officer Kunz agreed the SWAT team would execute the "no knock" warrant the same day it was issued. Dkt. [42]-1 at 1. The SWAT team broke up into two groups. One team tried to gain access to the residence through the front door, but was unsuccessful because the door was barricaded shut. Officer Kunz led a group of officers to obtain entry through the back door of the home. Dkt. [42]-1 at 2.

As Officer Kunz approached the back door, he saw a heavy-set Black male in the rear bedroom through a window.[1] Dkt. [47]-1 at 1. Lewins left the bedroom and went into the bathroom to have a bowel movement. Dkt. [47]-1 at 1.

By this time, Officer Kunz's group of officers had successfully entered through the back door of the home. A large, aggressive pit bull was in the living room. To disengage the dog, an officer deployed a flash bang device into the living room and the dog retreated to a second bedroom. Dkt. 42-1 at 2.

Officer Kunz pursued Lewins to the bathroom. Officer Kunz observed Lewins, a 400-pound man, sitting on the toilet. Lewins told Officer Kunz that the bathroom door was not locked. Dkt. [47]-1 at. 1. Prior to entering the bathroom, an officer deployed a flash-bang device. Officer Kunz then knocked Lewins to the floor and kicked him. In the meantime, a John Doe officer stomped on Lewins' head, face, mouth, and jaw. Officer Kunz also kicked Lewins in the body,

---

[1] In his narrative, Mr. Lewins identifies himself as being in that bedroom. Dkt. [47]-1 at 1.

head, and mouth, knocking out his teeth. Dkt. [47]-1 at 1. Officer Kunz handcuffed Lewins and slammed his face into the bathroom floor. Dkt. [47]-1at 1.

Lewins received lacerations to his face and scalp and bruises and abrasions on his arms, legs, torso, and head. Lewins was handcuffed and placed in a chair while officers searched the home. Dkt. 47-1 at 1. The search revealed, among other items, cocaine, marijuana, $500.00 in cash, and three guns. Dkt. [42]-1 at 3. Despite asking to be transported to the hospital, only medics appeared on scene to administer aid to Lewins. Thereafter, he was arrested for dealing cocaine and marijuana and illegal possession of a firearm. Dkt. [42]-1 at 3. Officer Meier photographed Lewins' injuries.[2] Dkt. [47]-1at 1. At no time prior to his arrest did Officer Meier have any physical contact with Lewins. Dkt. [42]-1 a 3. Lewins did not file a notice of tort claim with IMPD or the City of Indianapolis. Dkt. [42]-2.

### C. Statement of Facts in Dispute

The Defendants present a very different version of the events. The following facts are denied by Lewins and do not appear in his narrative.

Upon approaching the King Avenue address, the SWAT team was immediately compromised. Individuals inside the residence were peering out the windows of the home and saw the SWAT team as it approached. Dkt. [42] at 2. As Officer Kunz approached the back door, he saw Lewins through a bedroom window. Officer Kunz began yelling commands, specifically, "Police. We have a search warrant. Get your hands up and lay flat on the ground." Lewins did not comply. *Id*. Officer Kunz then observed Lewins grab a bag of cocaine and stuff it in the heater register of the bedroom floor. Lewins then proceeded into the bedroom closet where Officer Kunz

---

[2] The Defendants identify Officer Meier as Kent Meier, but Mr. Lewins identifies him as Mark Meier. The Court assumes for purposes of this motion that it is the same individual.

4

saw him grab an item and put it in the waistband of his pants. Officer Kunz assumed it was a gun. *Id*.

Officer Kunz then followed Lewins to the locked bathroom. Upon entering the bathroom, Officer Kunz observed Lewins sitting on the toilet with his pants on; however, his body was leaned into the shower with his hands behind the curtain. Dkt. [42] at 3. Officer Kunz ordered Lewins to show his hands and get on the ground. Lewins failed to comply with his orders. Instead, he leaned his hands further behind the shower curtain. Dkt. [42] at 3. Believing that Lewins was armed and possessed a weapon behind the shower curtain, Officer Kunz kicked Lewins twice in the stomach while continuing to yell commands. *Id*. Officer Kunz's first two kicks were unsuccessful, so he kicked Lewins again. However, as he delivered the kick, Lewins lowered his head and the kick landed on his chin causing a laceration. *Id*. The final kick was effective and Lewins showed Officer Kunz his hands. Officer Kunz then handcuffed Lewins. *Id*.

## II. **STANDARD OF REVIEW**

A motion for summary judgment asks that the court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Federal Rule of Civil Procedure 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The key inquiry is whether admissible evidence exists to support a plaintiff's claims, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir. 1999). When evaluating this inquiry, the court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial ... against the

5

moving party." *Celotex,* 477 U.S. at 330.

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Pro. 56(e). The Seventh Circuit has explained:

> Once a party files a motion for summary judgment showing within its four corners entitlement to prevail, judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial."

*Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir. 1989) (quoting *Celotex*, 477 U.S. at 322).

Here, Lewins has filed a response to Defendants' Motion for Summary Judgment with a statement of material facts in dispute, Dkt. [46], a memorandum of law, Dkt. [47], which contains a factual narrative of the events that occurred on October 10, 2014, signed under penalties of perjury, and an affidavit, Dkt. [48], that refers to the factual narrative. Taken together, these documents sufficiently comply with Local Rule 56-1.[3] *See Gray v. Hardy*, 826 F.3d 1000, 1004-05 (7th Cir. 2016) (holding that district courts are not required to hold *pro se* litigants to the potential consequences of their failure to comply with the Local Rules and can instead take "a more flexible approach," including by ignoring the deficiencies in their filings and considering the evidence they submit). Such flexibility is particularly warranted when a *pro se* litigant is proceeding without the benefit of counsel and where such flexibility allows the case to be

---

[3] In Mr. Lewins' memorandum in support of his Response in opposition to motion for summary judgment, he provides a narrative summary of the events of October 10, 2014. Dkt. [47]. In his affidavit, he references the narrative. Dkt. [48]. In his statement of material facts in dispute, Mr. Lewins either admits, denies, or neither admits nor denies the statement of material facts not in dispute set forth by the Defendants. Dkt. [46].

considered on the merits. *See Robinson v. Sweeny*, 794 F.3d 782, 784 (7th Cir. 2015) ("[i]f the courts intend not to excuse procedural mistakes by *pro se* litigants, the spirit of legal justice would seem to require that someone inform those litigants of the rudiments of federal procedure . . . .").

## III. DISCUSSION

### A. Excessive Force-Fourth Amendment

In his Complaint, Lewins argues that the Defendants used excessive force against him in violation of the Fourth Amendment. Dkt. [1]. The Fourth Amendment provides: "The right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. An officer's use of deadly force is a "seizure" within the meaning of the Fourth Amendment and thus, is constitutional only if it is reasonable. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985); *Muhammed v. City of Chicago*, 316 F.3d 680, 683 (7th Cir. 2002). An officer may use deadly force "'if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm....'" *Scott v. Edinburg*, 346 F.3d 752, 756 (7th Cir. 2003) (quoting *Garner*, 471 U.S. at 11–12). Whenever possible under the circumstances, an officer should identify himself as a law enforcement officer to the suspect. *Garner*, 471 U.S. at 11–12. An officer's use of force is "judg[ed] from the totality of the circumstances at the time of the [seizure]." *Fitzgerald v. Santoro*, 707 F.3d 725, 733 (7th Cir. 2013).

In analyzing whether an officer's force was reasonable under the circumstances, the Court must "remain cognizant of 'the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.'" *Abbott v. Sangamon County, Ill.*, 705 F.3d 706 724 (7th Cir. 2013) (quoting *Graham v. Conner*, 490 U.S. 386, 397 (1989)). The Court must

7

therefore give "considerable leeway to law enforcement officers' assessments about the appropriate use of force in dangerous situations." *Baird v. Renbarger*, 576 F.3d 340, 342 (7th Cir. 2009). "'[W]hen material facts (or enough of them to justify the conduct objectively) are undisputed, then there would be nothing for a jury to do *except* second-guess the officers,'" and therefore, "[i]n this situation…the reasonableness of the force used is a legal question." *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010) (emphasis in original) (quoting *Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003)).

As evidenced by the parties' conflicting accounts of the events on October 10, 2014, there exist genuine issues of material fact concerning the matters leading up to Lewins' arrest, and thus, whether Officer Kunz's actions were objectively reasonable in light of the facts and circumstances confronting him. Indeed, the reasonableness of the use of such force as Officer Kunz used will likely turn on which version of the facts the trier of fact accepts. A reasonable jury could conclude that Lewins was simply sitting on the toilet using the bathroom when Officer Kunz burst through the bathroom door and kicked him in the body, head, and mouth, knocking out several teeth in an attempt to arrest him. In this scenario, Lewins never posed a threat to Officer Kunz's safety, and thus, the use of force was excessive and unjustified. However, a reasonable jury could resolve all factual disputes in favor of Officer Kunz, and conclude that such force was objectively reasonable. Accordingly, the Court finds an issue of fact as to whether Officer Kunz violated Lewins' Fourth Amendment rights by using excessive force.

Regarding Officer Meier, Lewins does not set forth any facts that he used any force at all against him. Rather, he only asserts that Officer Meier took photographs of the injuries to his face. Dkt. [47]-1. Because no fact finder could find any set of facts that Officer Meier used any force toward Lewins, reasonable or not, Officer Meier is entitled to summary judgment.

The Motion for Summary Judgment for a violation of Lewins' Fourth Amendment rights is **denied** with respect to Officer Kunz and **granted** with respect to Officer Meier.

B. <u>**Qualified Immunity**</u>

Because the Court has granted summary judgment in favor of Officer Meier on Lewins' Fourth Amendment claim of excessive force, the Court will only discuss qualified immunity as it relates to Officer Kunz. Officer Kunz asserts that even if he used excessive force against Lewins, he is shielded from liability by virtue of qualified immunity. A determination of qualified immunity must be made early in the litigation, as "[q]ualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

As a general matter, the "doctrine of qualified immunity shields public officials from civil liability if their 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Allin v. City of Springfield*, 845 F.3d 858, 862 (7th Cir. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The Seventh Circuit recently described the burden that falls upon a plaintiff when a defendant raises a qualified immunity defense, providing that:

> [a]lthough qualified immunity is an affirmative defense, the plaintiff has the burden of defeating it once the defendants raise it. To do so, the plaintiff must show (1) that the defendant violated a constitutional right, when construing the facts in the light most favorable to the plaintiff, and (2) that the right was clearly established at the time of the alleged violation, such that it would have been clear to a reasonable actor that her conduct was unlawful. A failure to show either is fatal for the plaintiff's case, and we may begin (and possibly end) with either inquiry.

*Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017); *see also Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (quoting *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001)) (providing that a plaintiff can meet the burden of demonstrating the violation of a clearly

established right "by showing that there is 'a clearly analogous case establishing a right to be free from the specific conduct at issue' or that 'the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights.'").

"To be clearly established, at the time of the challenged conduct, the right's contours must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Humphries v. Milwaukee Cnty.*, 702 F.3d 1003, 1006 (7th Cir. 2012) (internal quotation omitted). "While a case directly on point is not required, existing precedent must have placed the statutory or constitutional question beyond debate." *Id*.

While Lewins did not specifically respond to the Defendants' qualified immunity argument, the Court has already determined that, taking the facts in the light most favorable to Lewins, a reasonable trier of fact could conclude that Officer Kunz's use of force violated Lewins' Fourth Amendment rights. Thus, the primary issue is whether the constitutional right allegedly violated was defined at the appropriate level of specificity at the time of the violation.

In the context of excessive force, "there is no doubt that [case law] clearly establishes that the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Saucier*, 533 U.S. at 201-02. In other words, the law is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*; *see also Wheeler v. Lawson*, 539 F.3d 629, 640 (7th Cir. 2008) (finding that case law must give fair warning to a reasonable police officer that his conduct was unlawful in the situation he confronted).

Based on Lewins' factual narrative and affidavit, a reasonable jury could find that a reasonable officer would have known that the force used by Officer Kunz was excessive under the factual circumstances construed in Lewins' favor and defeat the claim for qualified immunity.

10

Because the evidence construed in Lewins' favor does not support the Defendants' qualified immunity claim for Officer Kunz, the Motion for Summary Judgment based on qualified immunity is **denied**.

C.      **State Law Tort Claim**

In their answer, the Defendants asserted as an affirmative defense that Lewins' negligence claim was barred because he failed to provide them with the written tort claim notice required by Indiana Code § 34-13-3-8. The Defendants have now moved for summary judgment on that basis. The Defendants also argue that they are immune pursuant to Indiana Code § 34-13-3-5(b).

In his statement of material facts in dispute, Lewins neither admits nor denies the Defendants' statement that he failed to file a notice of tort claim on the IMPD or the City of Indianapolis. Dkt. [42]-2; Dkt. [46] at 2. The Defendants have provided undisputed evidence that Lewins did not file a notice of tort claim, Dkt. [42]-2, and Lewins does not dispute this with his own evidence.

The ITCA governs lawsuits against political subdivisions and their employees. It requires early notice that a claim exists, and provides substantial immunity for conduct within the scope of the employees' employment. *Celebration Fireworks, Inc. v. Smith*, 737 N.E.2d 450, 452 (Ind. 2000). The ITCA bars suits for which no timely notice has been given. *Ball v. Jones*, 52 N.E.3d 813, 820 (Ind. Ct. App. 2016).

The notice requirement of the ITCA provides that a tort claim against a government entity, including a government employee acting in the course and scope of his or her employment, is barred unless the claimant provides the entity with notice of the claim within 180 days of the loss. Ind. Code § 34–13–3–8. Additionally, the ITCA applies to all torts against persons or property. *Cantrell v. Morris*, 849 N.E.2d 488, 495 n. 4 (Ind. 2006).

Lewins challenges the assertion that the Defendants were acting within the scope of their employment. Specifically, he argues that the Defendants were acting in their individual capacities and their conduct was criminal, willful, malicious, and outside the scope of their employment under Indiana Code § 34-13-3-5(c) when they allegedly kicked his teeth out "without any police actionable employment reasoning." Dkt. [47]at 1. Because their conduct was outside the scope of their employment, he argues, the notice provision of the ITCA was not required. Initially, the Defendants did not file a reply brief within the time frame set forth by the Local Rules. On June 8, 2018, the Court directed the Defendants to brief the issue whether the notice provision of the ITCA is applicable here because the Defendants were, according to Lewins' argument, acting outside the scope of their employment when they allegedly applied excessive force. The Defendants filed a reply on June 25, 2018.[4]

The ITCA's notice provision applies equally to its employees as to political subdivisions, so long as the employee's allegedly tortious activity occurred while the employee was acting within the scope of his or her employment. Ind. Code § 34–13–3–8; *Ball*, 52 N.E.3d at 820. In such instances, the employer political subdivision is required to defend an individual employee named in a tort action. *Poole v. Clase*, 476 N.E.2d 828, 831 (Ind. 1985). However, the immunities granted by the ITCA "might be lost when an employee acts 'so far out of the scope of his or her employment as to amount to fraud or criminal conduct.'" *Celebration Fireworks, Inc.*, 727 N.E.2d at 452 (citing *Poole*, 476 N.E.2d at 831); *see also* Ind. Code § 34–13–3–5(c).

"To be within the scope of employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized." *Id*. (citing Restatement (Second) Agency § 229 (1958)). "To be incidental, however, [an act] must be one which is subordinate to or pertinent

---

[4] Because the Defendants did not raise any new arguments or dispute Mr. Lewins' evidence in the reply ordered by the Court, a sur-reply is not appropriate under the Local Rules. *See* Local Rule 56-1(d).

12

to an act which the servant is employed to perform." *Id*. (citing Restatement (Second) Agency § 229 cmt. b (1958)). Even tortious acts may fall within the scope of employment. *Ball*, 52 N.E.3d at 820.

An officer acts within the course and scope of employment when his conduct is "of the same general nature as that authorized, or incidental to the conduct authorized." *Harness v. Schmitt*, 924 N.E.2d 162, 166 (Ind. Ct. App. 2010) (stating that there appears to be no authority suggesting that when a police officer performs his duties in a negligent manner, the officer is no longer "enforcing a law. . . ."). When detecting and arresting criminals, "[a]n officer may engage in misconduct to an extensive degree and still be within the scope of his employment for these purposes, so long as 'his purpose was, to an appreciable extent, to further his employer's business." *Snyder v. Smith*, 7 F. Supp. 3d 842, 875 (S.D. Ind. 2014) (quoting *Ellis v. City of Martinsville*, 940 N.E.2d 1197, 1209 (Ind. Ct. App. 2011)).

Thus, the question here is whether Officer Kunz was acting outside the scope of his employment during the events in question, while accepting the facts most favorable to Lewins. Det. Collins obtained a "no knock" warrant for the King Avenue address on October 10, 2014, that the SWAT team would execute that day. Dkt. [42]-1 at 1. Officer Kunz led a group of officers to obtain entry through the back door of the home. Dkt. [42]-1 at 2.

As Officer Kunz approached the back door, he saw a heavyset black man in the rear bedroom through a window. Dkt. [47]-1 at 1. Lewins left the bedroom and went into the bathroom. Dkt. [47]-1 at 1. Officer Kunz successfully entered through the back door of the home. Officer Kunz pursued Lewins to the bathroom. Officer Kunz observed Lewins, a 400-pound man, sitting on the toilet. Prior to entering the bathroom, Officer Streeter deployed a flash-bang device.

Lewins does not dispute that Det. Collins obtained a valid warrant or that Officer Kunz executed that valid warrant. An officer executing a warrant is within the course and scope of his employment because executing a warrant is part of the IMPD's purpose. *Harness*, 924 N.E.2d at 166. Similarly, Lewins does not challenge that Officers Kunz and Meier properly arrested him. *See* Ind. Code § 36-8-3-10(a)(3) (police officers have a duty to "detect and arrest criminals."). Such conduct is clearly within the scope of the Defendants' employment.

Police officers remain in the course and scope of employment even if they commit tortious or criminal conduct, so long as the purpose was to further their employer's business. *Brown v. City of Ft. Wayne*, 752 F. Supp. 2d 925, 945 (N.D. Ind. 2010) (citing *Bushong v. Williamson*, 790 N.E.2d 467, 473 (Ind. 2003)). Here, at the time Officer Kunz was executing the search warrant at the King Street address, he was on public time, performing a function central to that of a police officer. *Celebration Fireworks*, 737 N.E.2d at 453. Specifically, he was serving a search warrant on a house known to law enforcement as one from which drugs were sold. The actions that occurred to effectuate Lewins' arrest were closely associated with the actions of law enforcement authorized by the IMPD and in furtherance of a narcotics investigation. Officer Kunz's scope of employment consists of activities involving the pursuit of the governmental entity's purpose. *Kind v. Northeast Security*, 790 N.E. 2d 474, 483 (Ind. 2003). Executing a warrant and arresting criminals are part of a police department's purpose. As such, the Court concludes that Officer Kunz's alleged use of excessive force to arrest Lewins was "incidental to the conduct authorized" which was serving and executing an arrest warrant. Because Officer Kunz was acting within the scope of his employment during the service of the warrant and arrest of Lewins, the notice provision of the ITCA is applicable to Officer Kunz's conduct and Lewins' negligence claim is

barred because he failed to comply with the notice provision of the ITCA. Officer Kunz's motion for summary judgment as to the state law claim for negligence is **granted**.

Similarly, the notice provision of the ITCA is applicable to Officer Meier because he was acting within the scope of his employment when he took photographs of Lewins at the time of his arrest. Because Lewins did not provide notice of his lawsuit pursuant to Ind. Code § 34–13–3–8, his tort claim against Officer Meier is barred. Officer Meier's motion for summary judgment as to the state law claim for negligence is **granted**.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Defendants' Motion for Summary Judgment, Dkt. [41], is **GRANTED in part and DENIED in part.** Officer Kunz's Motion for Summary Judgment with respect to the Fourth Amendment claim of excessive force is **DENIED**. Officer Kunz's argument he is entitled to qualified immunity is **DENIED**. Officer Meier's Motion for Summary Judgment with respect to the Fourth Amendment claim of excessive force is **GRANTED**. Officer Kunz's Motion for Summary Judgment on the state law claim for negligence is **GRANTED**. Officer Meier's Motion for Summary Judgment on the state law claim for negligence is **GRANTED**.

This action shall now proceed to trial or settlement on the only remaining claim – Lewins' Fourth Amendment claim of excessive force against Officer Kunz. The Magistrate Judge is requested to set a settlement conference. If Lewins is interested in having counsel appointed on his behalf to assist him during a settlement conference, he must file a motion for assistance with the recruitment of counsel, no later than **July 25, 2018. The Clerk is instructed** to include a blank copy of the motion for assistance recruiting counsel to Lewins along with this Entry.

**The Clerk is also instructed** to terminate Kent Meier on the docket.

No partial judgment shall issue at this time.

**SO ORDERED**.

Date: 7/10/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

MARQUIS LEWINS, #111135
CORRECTIONAL INDUSTRIAL FACILITY
Electronic Service Participant – Court Only

Tara Lynn Gerber
CITY OF INDIANAPOLIS
tara.gerber@indy.gov

Magistrate Judge Doris Pryor